**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| BINDERIYA GANSUKH,<br>Petitioner,<br>v.<br>WARDEN, ADELANTO ICE PROCESSING CENTER, et al.,<br>Respondents. | NO. ED CV 26-5447-AS<br><br>**MEMORANDUM DECISION AND ORDER** |

**I.**

**INTRODUCTION**

Shortly after midnight on September 18, 2026, Binderiya Gansukh ("Petitioner"), an immigration detainee proceeding through counsel, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 ("Petition") against: the Warden of the United States Immigration and Customs Enforcement ("ICE") Processing Center in Adelanto, California; the Los Angeles Field Office Director for ICE; David J. Venturella, Acting ICE Director; Markwayne Mullin, Secretary of the United States Department of Homeland Security ("DHS"); Todd Blanche, United States Attorney General; the Executive Office for Immigration Review ("EOIR");

and Sirce E. Owen, Acting EOIR Director (collectively "Respondents"). (Docket ("Dkt.") No. 1). The Petition alleges Petitioner is being detained in violation of due process of law and statutory authority. (Petition at 6-7; Supplemental Petition, ¶¶ 46-63). Petitioner seeks her immediate release from custody or, alternately, an individualized custody hearing within seven days. (Petition at 7; Supplemental Petition at 18).

On September 28, 2026, Respondents filed an untimely Answer to the Petition,[1] and Petitioner filed a Reply that same day. (Dkt. Nos. 18-19).

**II.**

**BACKGROUND**

Petitioner is a native and citizen of Mongolia who was admitted to the United States as a student on August 21, 2017. (Supplemental Petition, ¶¶ 1, 11, 27-28). On January 5, 2018, Petitioner applied for asylum with the United States Citizenship and Immigration Services ("USCIS"). (Supplemental Petition, ¶¶ 1, 29). Shortly thereafter, USCIS issued a written Acknowledgment of Receipt stating that Petitioner's application "'was received and is pending as of [January 5, 2018]' and that [she may] 'remain in the U.S. until [her] asylum application is decided." (Id.). Petitioner's application is still

[1] The Answer should have been filed by September 25, 2026. (Dkt. No. 8). Nevertheless, the Court will consider the arguments the Answer raises.

pending, and DHS has authorized Petitioner's employment through September 10, 2030. (Supplemental Petition, ¶¶ 1, 29-30 & Exh. E).

On September 4, 2026, ICE officers arrested Petitioner while she and her fiancé, who is a United States citizen, were traveling to Las Vegas to get married. (Supplemental Petition, ¶¶ 2, 33; Dkt. No. 18-1). That same day, DHS served Petitioner with a Notice to Appear, charging her with removability under INA § 237(a)(1)(C)(i), 8 U.S.C. § 1227(a)(1)(C)(i), as a noncitizen who failed to maintain the nonimmigrant status under which she was admitted. (Supplemental Petition, ¶¶ 2, 34-35, Exh. A).

At the time the Petition was filed, Petitioner was detained at the Adelanto ICE Processing Center. (Supplemental Petition, ¶¶ 2, 11, 40). Petitioner has since been moved to the California City Immigration Processing Center in California City, California. (<u>See</u> Dkt. No. 11 at 3). Petitioner had a bond hearing scheduled for September 22, 2026; however, the hearing was vacated after Petitioner was transferred. (Dkt. 18-4; Answer at 7-8).

**III.**

**DISCUSSION**

**A. <u>The Court Has Jurisdiction Over the Petition</u>**

As set forth above, Petitioner filed her Petition while detained at the Adelanto ICE Processing Center in San Bernardino County, which is in this district. 28 U.S.C. § 84(c)(1). Shortly thereafter,

Petitioner was transferred to the California City Immigration Processing Center in Kern County, California, which is in the Eastern District of California. 28 U.S.C. § 84(b). This transfer did not affect this Court's jurisdiction over the pending Petition. See, e.g., Rumsfeld v. Padilla, 542 U.S. 426, 441 (2004) ("[W]hen the Government moves a habeas petitioner after she properly files a petition naming her immediate custodian, the District Court retains jurisdiction and may direct the writ to any respondent within its jurisdiction who has legal authority to effectuate the prisoner's release." (citing Ex Parte Endo, 323 U.S. 283 (1944))); Mujahid v. Daniels, 413 F.3d 991, 994 (9th Cir. 2005) ("'[J]urisdiction attaches on the initial filing for habeas corpus relief, and it is not destroyed by a transfer of the petitioner and the accompanying custodial change.'" (quoting Francis v. Rison, 894 F.2d 353, 354 (9th Cir. 1990))); Yan v. Mullin, 2026 WL 2603450, *1 (C.D. Cal. 2026) ("The Court maintains jurisdiction over the Petition because Petitioner was only transferred outside the Central District of California after the Petition was filed.").

**B. Exhaustion of Administrative Remedies is not Required**

Respondents contend this action should be dismissed because Petitioner failed to exhaust her administrative remedies by seeking a bond hearing before an Immigration Judge ("IJ") and then, if not released, appealing to the Board of Immigration Appeals ("BIA"). (Answer at 6-8). Petitioner disagrees, arguing exhaustion is not required and would be futile. (Supplemental Petition, ¶¶ 43-45; Reply at 7-8).

"In order to seek habeas relief under section 2241, . . . a petitioner must first, 'as a prudential matter,' exhaust his or her available administrative remedies." Singh v. Napolitano, 649 F.3d 899, 900 (9th Cir. 2010) (per curiam) (citation omitted); see also Hernandez v. Sessions, 872 F.3d 976, 988 (9th Cir. 2017) ("The exhaustion requirement is prudential, rather than jurisdictional, for habeas claims."); Ward v. Chavez, 678 F.3d 1042, 1045 (9th Cir. 2012) ("As a prudential matter, courts require that habeas petitioners exhaust all available judicial and administrative remedies before seeking relief under § 2241."). Courts may require prudential exhaustion when:

> (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.

Hernandez, 872 F.3d at 988 (quoting Puga v. Chertoff, 488 F.3d 812, 815 (9th Cir. 2007)). "Nonetheless, even if the three *Puga* factors weigh in favor of prudential exhaustion, a court may waive the prudential exhaustion requirement if 'administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void.'" Hernandez, 872 F.3d at 988 (quoting Laing v. Ashcroft, 370 F.3d 994, 1000 (9th Cir. 2004)).

The Court does not believe the three Puga factors weigh in favor of prudential exhaustion.[2] But even assuming they do, "Petitioner [is] excused from exhausting administrative remedies because further administrative proceedings would not address the primary issue presented in the Petition — whether Petitioner's [arrest and] detention complies with statutory authority and due process."[3] Alvarez-Guatibonza v. Adelanto ICE Processing Ctr., 2026 WL 1770663, *3 (C.D. Cal. 2026); see also R.N.G. v. Semaia, __ F. Supp. 3d __, 2026 WL 2089544, *3 (C.D. Cal. 2026) ("Here, even if the Court assumes that the *Puga* factors apply, Petitioner's pursuit of administrative remedies would be inadequate and futile. . . . A post-deprivation bond hearing . . . would not address the propriety of Petitioner's claim that he was not afforded constitutionally adequate procedural safeguards prior to the deprivation of his liberty interest." (emphasis in original)); Garcia v. Hyde, 817 F. Supp. 3d 112, 125 (D. R.I. 2025) ("Mr. Garcia ultimately raises a constitutional challenge in his habeas petition, an area over which the Immigration Court and the BIA lack any authority to adjudicate, thereby rendering appeal to those bodies futile."); Cao v.

---

[2] For instance, "the BIA's expertise is not necessary to decide the *legal* questions at issue here — whether Petitioner's continued detention complies with statutory authority and due process." Alvarez-Guatibonza v. Adelanto ICE Processing Ctr., 2026 WL 1770663, *2 (C.D. Cal. 2026) (italics in original); Hernandez, 872 F.3d at 989; Fuentes v. Mullin, 2026 WL 1847436, *6 (C.D. Cal. 2026); Soriano v. Hernandez, 830 F. Supp. 3d 1071, 1079 (W.D. Wash. 2026).

[3] "The exception to the rule that constitutional claims need not be exhausted before the agency are claims of denial of procedural due process by the IJ, which must be raised before the BIA because the agency does have the power to adjudicate procedural due process claims." Morgan v. Gonzales, 495 F.3d 1084, 1090 n.2 (9th Cir. 2007). Here, however, despite Respondents' argument (see Answer at 7), this exception is inapplicable since Petitioner is not challenging any act or omission by an IJ.

Warden of Adelanto ICE Processing Ctr., 2026 WL 2575932, *2 (C.D. Cal. 2026) ("Petitioner contends that the Government violated the Fifth Amendment by taking her into custody without pre-deprivation process. The BIA's authority in a custody appeal extends to redetermination of custody, not to the constitutionality of the arrest that preceded it. Requiring exhaustion of a remedy that could not redress the claim would serve none of the doctrine's purposes."); Rankbirsingh v. Giles, 2026 WL 1455421, *2 (C.D. Cal. 2026) ("Petitioner challenges the constitutionality and sufficiency of the process by which he was arrested without notice or warrant, that his bond was de facto revoked, and that he was re-detained. This court has habeas jurisdiction under § 2241 to consider these claims, while Immigration Judges and the BIA do not." (citation omitted)). "Moreover, requiring Petitioner to be subjected to unlawful detention pending [exhaustion] would cause irreparable harm, which is a separate and independent basis to waive exhaustion[.]" Rodriguez v. Cabrera v. Mattos, 808 F. Supp. 3d 1159, 1176 (D. Nev. 2025); Kumar v. Rios, 2026 WL 1764923, *3 (C.D. Cal. 2026); see also Hernandez v. Mullin, 2026 WL 846037, *8 (C.D. Cal. 2026) ("[R]equiring Petitioner to be detained in alleged violation of his constitutional right to due process, pending the BIA's decision would cause irreparable harm, which alone provides a sufficient basis to waive exhaustion. . . ."). Accordingly, for these reasons, Petitioner is excused from having to exhaust administrative remedies, and Respondents' request to dismiss the pending Petition for failure to exhaust administrative remedies is denied.

\\

\\

\\

**C. Petitioner is Entitled to Relief on Her Due Process Claim**

"The Due Process Clause of the Fifth Amendment prohibits the Government from depriving individuals of their life, liberty, or property, without due process of law." Hernandez, 872 F.3d at 990; Zadvydas v. Davis, 533 U.S. 678, 690 (2001). "[T]he Due Process Clause applies to all persons within the United States, including aliens, whether their presence is lawful, unlawful, temporary, or permanent." Zadvydas, 533 U.S. at 693; Hernandez, 872 F.3d at 990; see also Trump v. J.G.G., 604 U.S. 670, 673 (2025) (per curiam) ("'It is well established that the Fifth Amendment entitles aliens to due process of law' in the context of removal proceedings." (quoting Reno v. Flores, 507 U.S. 292, 306 (1993))). "Freedom from imprisonment — from government custody, detention, or other forms of physical restraint — lies at the heart of the liberty that [the Due Process] Clause protects." Zadvydas, 533 U.S. at 690; Hernandez, 872 F.3d at 990. "'Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty.'" Meneses v. Santacruz, 811 F. Supp. 3d 1158, 1162 (C.D. Cal. 2025) (quoting Pinchi v. Noem, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025)); see also Ortega v. Bonnar, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019) ("[T]he fact that a decision-making process involves discretion does not prevent an individual from having a protectable liberty interest."), appeal dismissed by, 2021 WL 1590193 (9th Cir. 2021).

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property'

interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." Mathews v. Eldridge, 424 U.S. 319, 332 (1976). Courts examine procedural due process claims in "two steps." Kentucky Dep't of Corrs. v. Thompson, 490 U.S. 454, 460 (1989); Vasquez v. Rackauckas, 734 F.3d 1025, 1042 (9th Cir. 2013). First, courts consider whether the petitioner was deprived of a constitutionally protected liberty interest, and second "whether that deprivation was accompanied by sufficient procedural protections." Johnson v. Ryan, 55 F.4th 1167, 1179 (9th Cir. 2022); Thompson, 490 U.S. at 460.

The parties dispute whether Petitioner has a constitutionally protected liberty interest. Petitioner asserts that she does, and that she has been denied due process of law because she was taken into custody and remains detained without receiving any "individualized custody process." (Supplemental Petition, ¶¶ 44, 46-52). Respondents disagree, arguing that as ICE has not previously detained Petitioner, "she has not gained a vested liberty interest[,]" and her due process claim fails. (Answer at 3-5). That is, while courts in this district and elsewhere have held that a noncitizen's release from immigration custody gives "rise to 'the most elemental of liberty interests – the interest in being free from physical detention by one's own government[,]'" Martinez v. Noem, 821 F. Supp. 3d 1183, 1190 (C.D. Cal. 2026) (quoting Hamdi v. Rumsfeld, 542 U.S. 507, 529 (2004)); Medrano-Rocha v. Santacruz, 817 F. Supp. 3d 871, 878 (C.D. Cal. 2026); see also M.R. v. Chestnut, 827 F. Supp. 3d 1348, 1355 (E.D. Cal. 2026) ("Petitioner's original release and time out of custody gave rise to a constitutionally protected liberty interest."); Chavarriaga Rojas v. Albarran, 826 F. Supp. 3d 1155, 1165 (N.D. Cal. 2025) ("Courts in this

district consistently hold that when a noncitizen is released pending civil removal proceedings, the noncitizen has a protected liberty interest in remaining out of immigration custody.”), in Respondents’ view, it is ***only*** those noncitizens who the government has previously detained and then released into the United States who have acquired a liberty interest in their freedom from detention.

The Court disagrees with Respondents’ argument.[4] Contrary to Respondents’ contention, “[j]udges throughout the Ninth Circuit have repeatedly held . . . ‘that a noncitizen who has lived at liberty for an extended duration while [her] immigration case proceeds — pursuant to the Government’s affirmative decision not to detain [her] — holds a protected liberty interest in remaining free from custody, and may not be detained without pre-deprivation process.’” Ruiz Tellez v. United States Gen. Att’y, 2026 WL 2654571, *2 (E.D. Cal. 2026) (quoting Norberto C.M. v. Warden, Central Valley Annex, 2026 WL 1992747, *4 (E.D. Cal. 2026)); see also Cao v. Johnson, 2026 WL 2751379, *1 (C.D. Cal. 2026) (For “‘constitutional purposes, there should be no material

---

[4] As Judge Breyer recently noted in addressing a similar argument:

> [T]he government’s reasoning has troubling implications when stripped down to its essentials: under their framework, a person’s interest in being free would depend on the government first depriving them of that freedom. . . . That cannot be right. . . . While this Court does not doubt that the decision to release an immigrant from custody can create a liberty interest, it strains credulity to imagine that this is the only route to such an interest. An interest in liberty that could only be bestowed by the government would provide little comfort to those seeking protection from its abuses.

Chaparro Ayala v. Albarran, 2026 WL 2722780, *4 (N.D. Cal. 2026) (emphasis in original).

difference between an alien released from detention by immigration authorities and an alien whom immigration authorities previously chose not to detain.' The Court finds persuasive a decision . . . which found the distinction 'specious' for constitutional purposes." (citing Kharitonova v. Albarran, 2026 WL 531441, *2 (N.D. Cal. 2026)); Zhou v. Janec[k]a, 2026 WL 2365550, *5 (C.D. Cal. 2026) ("Courts have found a substantial liberty interest in circumstances where noncitizens commenced immigration proceedings, and the government chose not to detain them."); Abdeltawab v. Armant, 2026 WL 1045564, *2 (C.D. Cal. 2026) (The principle that a noncitizen has a protected liberty interest in remaining out of custody "extends to those like Petitioner who have never been in immigration custody in the first place due to years of deliberate acquiescence by Respondents."); Chaparro Ayala v. Albarran, 2026 WL 2722780, *3 (N.D. Cal. 2026) ("When the government makes 'a decision not to detain [someone] in the first place,' that decision can create 'the same liberty interest in [that person's] continued freedom as an individual initially detained.'" (quoting Kharitonova, 2026 WL 531441 at *2).

Here, Petitioner arrived in the United States on August 21, 2017, applied for asylum on January 5, 2018, and was informed she could remain in the United States until her asylum application was decided, which has not yet occurred. During this time, Petitioner resided in the United States for over nine years before ICE detained her. Additionally, Petitioner received employment authorization, which is currently valid through September 10, 2030, and also established substantial community ties, including becoming engaged to a United

States citizen.[5] Accordingly, "[a]lthough the government did not detain and then release [Petitioner], it made a decision not to detain her in the first place; Petitioner thus has the same liberty interest in her continued freedom as an individual initially detained." Kharitonova, 2026 WL 531441 at *2; Zhou, 2026 WL 2365550 at *5; Abdeltawab, 2026 WL 1045564 at *2; see also Yao v. Janec[k]a, 2026 WL 2666861, *4 (C.D. Cal. 2026) ("Here, the Court finds that Petitioner has demonstrated a protected liberty interest in remaining at liberty in the community absent sufficient justification for her re-detention, based on the government's decision not to detain her or otherwise impede her liberty while exercising authority over her for purposes of adjudicating her application for immigration relief."); Khushvaktov v. Santacruz, 2026 WL 2491407, *3 (C.D. Cal. 2026) (Petitioner, who entered the United States on a nonimmigrant student visa, filed an application for asylum that remains pending, and who USCIS authorized for employment through September 8, 2030, "developed a substantial liberty interest in remaining out of custody based on the length of time he lived in the United States and the ties he built to the community over the past nearly 6 years."); Troykalo v. Armant, 2026 WL 2602910, *4 (C.D. Cal. 2026) ("Respondents 'deliberate[ly] acquiesce[d]' to Petitioner's continued freedom by, among other things, affirmatively granting him employment authorization while his application was pending." (citation omitted)); Gagik T. v. Chestnut, 2026 WL 1837413, *3 (E.D. Cal. 2026) ("Petitioner was lawfully admitted in 2020. He filed a timely application for asylum that USCIS has accepted and that remains pending. Although his initial permission to enter the United States

---

[5] As noted, Petitioner was traveling to get married when ICE detained her.

expired, the government chose to grant him employment authorization. It then chose to renew it — and, indeed, it remains valid through 2030. By concluding that there was no need to detain Petitioner after his . . . visa had expired, and instead sanctioning his continued presence in the United States by granting and renewing his employment authorization, the government vested in Petitioner a liberty interest in his continued freedom.” (citation omitted)).

Having determined Petitioner has a protected liberty interest in remaining out of custody, the Court applies the three-part test established in Mathews to determine whether the government’s procedures were constitutionally sufficient. Under Mathews, courts consider:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government’s interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Mathews, 424 U.S. at 335; Rodriguez Diaz v. Garland, 53 F.4th 1189, 1207 (9th Cir. 2022); Hernandez, 872 F.3d at 993; Zhou, 2026 WL 2365550 at *5; Abdeltawab, 2026 WL 1045564 at *2.

As to the first factor, “Petitioner has a vested liberty interest in remaining free from detention as [she] has lived for the last [nine]

years." Abdeltawab, 2026 WL 1045564 at *2; Kharitonova, 2026 WL 531441 at *2; see also Hernandez, 872 F.3d at 993 ("As to the first [Mathews] factor, the private interest at issue here is 'fundamental': freedom from imprisonment is at the 'core of the liberty protected by the Due Process Clause.' That is beyond dispute." (citation omitted)); Meneses, 811 F. Supp. 3d at 1163 ("Petitioner has a substantial private interest in remaining in his home, providing for his family, and participating in the community, all out of custody."); Yao, 2026 WL 2666861 at *5 ("Petitioner has a substantial interest in remaining in the community and pursuing her application for immigration relief."); Troykalo, 2026 WL 2602910 at *4 ("Petitioner has a substantial private interest in remaining out of immigration custody. After Petitioner lawfully entered the United States in 2016 and filed his asylum application in 2017, Respondents 'made a decision not to detain [him]' during the pendency of his application. Hence, for nearly nine years, Respondents, with 'full knowledge of Petitioner's identity, immigration status[,] and location during the pendency of [his] immigration application[] . . . continuously elected not to detain [him] while exercising authority over [his] legal proceedings." This decision to allow Petitioner to live freely in the community gave rise to 'the most elemental of liberty interests – the interest in being free from physical detention by one's own government.'" (citations omitted)). Accordingly, the first Mathews factor favors Petitioner.

As to the second factor, it is undisputed that, despite her protected liberty interest, Petitioner was detained without notice and a pre-detention hearing. (Petition at 46-52). Under these

circumstances, there is a high risk of erroneous deprivation of liberty. See Martinez, 821 F. Supp. 3d at 1191 ("[T]he risk of erroneous deprivation is significant without a pre-detention hearing."); Meneses, 811 F. Supp. 3d at 1164 ("There is an unacceptably high risk that the government would erroneously deprive Petitioner of his liberty interest absent a pre-detention hearing."); Pinchi, 792 F. Supp. 3d at 1035 ("[I]t is clear that there is a significant risk that the government will erroneously deprive Ms. Garro of that liberty interest if it does not provide her with a pre-detention hearing. Where, as here, '[the petitioner] has not received any bond or custody . . . hearing,' 'the risk of an erroneous deprivation [of liberty] is high' because neither the government nor Ms. Garro Pinchi has had an opportunity to determine whether there is any valid basis for her detention."); Yao, 2026 WL 2666861 at *5 ("[T]here is a significant risk that the government will erroneously deprive Petitioner of [her] liberty interest if it does not provide her with pre-deprivation process."); Troykalo, 2026 WL 2602910 at *5 ("Where, as here, a petitioner has not received a hearing or other process prior to the revocation of her liberty, the risk of an erroneous deprivation of liberty is high." (citations omitted)); Tzoc v. LaRose, 2026 WL 2227161, *4 (S.D. Cal. 2026) ("Where the Government detains a noncitizen after years of government-authorized liberty without first providing notice or an opportunity to be heard before a neutral decisionmaker, courts have consistently concluded that the risk of erroneous deprivation is high and that a pre-deprivation hearing would significantly reduce that risk."); Gagik T., 2026 WL 1837413 at *4 ("The risk of erroneous deprivation from seizing a long-present, work-authorized asylum applicant with no criminal history, without any

prior opportunity to be heard, is substantial, and the value of a pre-deprivation hearing in reducing that risk is correspondingly high."); Torres Ferrera v. Scott, 2026 WL 776145, *5 (W.D. Wash. 2026) ("Where a person with a protected liberty interest is provided no process at all to contest its deprivation, due process cannot be satisfied. Put differently, no process can never equal due process. The risk of erroneous deprivation will always be unacceptably high where no process is provided. . . ."); G.S. v. Hermosillo, 2026 WL 179962, *3 (W.D. Wash. 2026) ("the absence of pre-deprivation procedures created an unacceptably high risk of erroneous deprivation"). Therefore, the second Mathews factor favors Petitioner.

"Third, courts have routinely recognized that the Government's interest in detaining individuals like Petitioner without a hearing is 'low.'" Abdeltawab, 2026 WL 1045564 at *3 (citations and emphasis omitted); see also Troykalo, 2026 WL 2602910 at *5 ("Respondents' interest in detaining Petitioner and the burden of a pre-detention hearing are both minimal."); Pinchi, 792 F. Supp. 3d at 1036 ("[T]here is no countervailing government interest — the third and final *Mathews* factor — that supports conducting a bond hearing only after Ms. Garro Pinchi has been detained, rather than in advance thereof."); Chaparro Ayala, 2026 WL 2722780 at *6 (same). And that is particularly so when, as here, "the government has not articulated any legitimate interest in support of detaining Petitioner without a pre-detention hearing."[6]

---

[6] "[D]etention for its own sake is not a legitimate governmental interest." Claros v. Albarran, 811 F. Supp. 3d 1062, 1070 (N.D. Cal. 2025); see also Pinchi, 792 F. Supp. 3d at 1036 ("Detention for its own sake, to meet an administrative quota, or because the government has not yet established constitutionally required pre-detention procedures

Kharitonova, 2026 WL 531441 at *3; Zhou, 2026 WL 2365550 at *6; Yao, 2026 WL 2666861 at *5; see also Chaparro Ayala, 2026 WL 2722780 at *6 ("Respondents' present no explanation for why their 'interests [in detaining Petitioner] must be satisfied immediately,' far be it one that outweighs the risk of an ongoing and erroneous deprivation of constitutional rights." (quoting E.A. T.-B v. Wamsley, 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025))). Indeed, "[t]he efficiency burden entailed by a bond hearing would be minimal. As other courts have observed, bond hearings require little expenditure of resources." Duong v. Kaiser, 800 F. Supp. 3d 1030, 1040 (N.D. Cal. 2025); see also Martinez, 821 F. Supp. 3d at 1192 ("[C]ustody hearings in immigration court are 'routine' and impose only a 'minimal' cost." (citations omitted)); Pinchi, 792 F. Supp. 3d at 1036 ("Nor can the government suggest that the cost of providing [a pre-deprivation hearing] would be fiscally or administratively onerous. If the government wishes to detain Ms. Garro Pinchi, it need only provide a hearing before a neutral decisionmaker. 'In immigration court, custody hearings are routine and impose a minimal cost.'" (citation omitted)); Chaparro Ayala, 2026 WL 2722780 at *6 ("[T]he fiscal and administrative burdens of a pre-deprivation hearing are insignificant."). Thus, the third Mathews factor favors Petitioner.

Therefore, applying the Mathews factors, Petitioner was denied due process of law when she was detained without notice and a pre-detention hearing. See Zinermon v. Burch, 494 U.S. 113, 127 (1990) (Applying Mathews, "the Court usually has held that the Constitution requires

---

is not a legitimate government interest.").

some kind of a hearing before the State deprives a person of liberty or property."); Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985) ("An essential principle of due process is that a deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.' We have described 'the root requirement' of the Due Process Clause as being 'that an individual be given an opportunity for a hearing before he is deprived of any significant [liberty or] property interest.'" (citations and italics omitted)); Khushvaktov, 2026 WL 2491407 at *4 ("Petitioner's arrest on August 4, 2026, without prior notice or a pre-deprivation hearing violated Petitioner's procedural due process rights."); Zhou, 2365550 at *6 ("Because each of the *Mathews* factors favors Petitioner's bid for pre-deprivation process, the Court finds that Petitioner's detention — which was accompanied by no process — violates the Due Process Clause."); Yao, 2026 WL 2666861 at *6 (same); Ordonez v. Mullin, 2026 WL 1630411, *4 (C.D. Cal. 2026) (same); Tzoc, 2026 WL 2227161 at *5 ("Balancing the *Mathews* factors, the Court concludes that due process required Respondents to provide Petitioner with notice and an opportunity to be heard before depriving him of his liberty. Petitioner had a substantial liberty interest in remaining free from physical detention after years of government-authorized liberty; the procedures employed created a significant risk of erroneous deprivation; and Respondents have identified no governmental interest sufficient to justify dispensing with pre-deprivation process. For those reasons, the Court concludes that Respondents violated Petitioner's procedural due process rights under the Fifth Amendment by detaining him without constitutionally adequate pre-deprivation process."). And "[b]ecause Petitioner's deprivation of liberty without

due process has been unlawful from its inception, her immediate release is required."[7] Torres Ferrera, 2026 WL 776145 at *6; Tzoc, 2026 WL 2227161 at *5; see also Martinez, 821 F. Supp. 3d at 1196 ("Petitioner's release from custody is the appropriate remedy" since among other things, "Petitioner continues to suffer irreparable harm so long as she remains unlawfully []detained"); Kositsin v. Santacruz, 2026 WL 2866467, *4 (C.D. Cal. 2026) ("Petitioner has a strong interest in remaining free from confinement, there is a significant risk that Respondents' lack of constitutionally adequate procedures has resulted in his unnecessary detention, and any government interest in refusing to provide such process is minimal. The Court therefore concludes that Petitioner's detention without adequate pre-deprivation process violated due process" and he is entitled to be released from custody); Orozco-Salazar v. Warden Desert View Facility, Adelanto ICE Processing Ctr., 2026 WL 2497334, *3 (C.D. Cal. 2026) ("Releasing Petitioner is narrowly tailored to the specific wrong, because it restores the status quo that was in effect before Respondents violated Petitioner's due process rights."); Khushvaktov, 2026 WL 2491407 at *4 ("Given th[e] violation of Petitioner's due process rights, the Court concludes that 'Petitioner's release is necessary to return him to the status quo.'" (citation omitted)); Ordonez, 2026 WL 1630411 at *4 ("As has been found in countless similar cases in this Circuit, the appropriate remedy . . . is to order Petitioners placed in the position they would have been absent the due process violation — that is, they should be released from custody on the conditions that were initially imposed."); Juan v. Noem, 2026 WL 607714, *3 (W.D. Wash. 2026) ("The appropriate

---

[7] Having so concluded, the Court does not address the other claims Petitioner raises.

remedy for the violation of Petitioner's constitutional rights is release.").

**IV.**

**ORDER**

Accordingly, it is hereby ORDERED that the Petition (Dkt. No. 1) is **GRANTED.** Respondents shall immediately release Petitioner (A# 216-258-993) from immigration custody without the imposition of any restraints on her liberty, such as reporting requirements, GPS, or electronic monitoring. Respondents are also enjoined from re-detaining Petitioner absent strict compliance with the requirements of due process and all applicable statutes and regulations. The Court further ORDERS that Respondents shall file a declaration by no later than 5:00 p.m. on October 3, 2026, confirming Petitioner has been released from custody.

Additionally, Petitioner states that another action she filed, Gansukh v. Mullin, CV 26-5679-CV(AS) ("Gansukh II"), which was transferred to this Court from the Eastern District (see Gansukh II, Dkt. Nos. 1, 5), "is being voluntarily dismissed." (Reply at 9). However, the Court has not received any such voluntary dismissal. If Petitioner intends to voluntarily dismiss Gansukh II, she should file a notice of voluntary dismissal by no later than October 3, 2026.

**IT IS SO ORDERED.**

DATED: October 1, 2026

/s/
ALKA SAGAR
UNITED STATES MAGISTRATE JUDGE